UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JULIE DELANEY and
WILLIAM P. DELANEY

        Plaintiffs,

        v.

ELI LILLY AND COMPANY,

        Defendant.

CIVIL ACTION No. 05-CV-10241 (MLW)

**ELI LILLY AND COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE DEPOSITION OF GEORGE W. PRICE AS UNTIMELY PRODUCED, OR IN THE ALTERNATIVE TO REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF <u>DETERMINING THE EXTENT OF GEORGE PRICE'S INFORMATION</u>**

      Plaintiffs seek to preclude Lilly from relying on deposition testimony from pharmacist George W. Price that rebuts the contention of Plaintiffs' purported "expert" Harold Sparr that "the drugstores in Boston/Hingham stocked Lilly's DES exclusively."  (Docket No. 45, Ex. 7, ¶ 7)  It is true that like Mr. Sparr, Mr. Price did not work at the dispensing pharmacy at issue in this case (Hingham Pharmacy) and there is no indication that he had personal knowledge concerning the brand of DES to which Ms. Delaney was allegedly exposed.  His testimony is offered simply to counter Mr. Sparr's global and unfounded assertion that all pharmacies in Hingham stocked Lilly's DES to the exclusion of all other manufacturers.[1]

      Much of Plaintiffs' motion argues that Mr. Price's deposition should be stricken because it was disclosed in Lilly's reply brief in support of its motion for summary judgment, and not in

---

[1] Mr. Price's deposition excerpt attached to Lilly's reply brief in support of its motion for summary judgment (Docket No. 50, Ex. 2) made clear that his testimony concerning non-Lilly brands of DES was focused on 1950 and 1951.  Lilly mistakenly characterized that testimony as relating to the "1960s" in Footnote 1 of its reply brief in support of its motion for summary judgment  (Docket No. 50) and its reply brief in support of its motion to strike Mr. Sparr's affidavit (Docket No. 49).  To alleviate any confusion, Lilly will file corrected versions of those reply briefs.

B3293336.2

Lilly's earlier responses to interrogatories. Yet because Mr. Price did not work at the dispensing pharmacy and therefore could not identify the brand of DES to which Ms. Delaney was exposed, his deposition simply was not responsive to Plaintiffs' interrogatory requests. Indeed, his deposition was not relevant at all until Plaintiffs introduced Mr. Sparr's statement in support of their opposition to Lilly's motion for summary judgment, alleging for the first time that all drugstores in Hingham stocked Lilly's DES exclusively.

Plaintiffs' alternative request is that it be permitted to reopen discovery in order to "determin[e] the extent of George Price's information." Plaintiffs failed to specify the type of discovery they would seek. Any effort would be futile since Mr. Price is deceased and, again, he had no personal knowledge concerning the DES brands stocked at the dispensing pharmacy. There also is no indication that his pharmacy retained any records concerning DES manufacturers; indeed, Lilly's counsel was informed by the Pharmacy Manager that the pharmacy has not retained any records dated prior to 1993.[2] In any event, Plaintiffs' request for additional discovery is puzzling since they contemporaneously opposed Lilly's motion to strike Mr. Sparr's statement on the basis that he already completed a competent and thorough "expert" investigation concerning the brands of DES that existed in Hingham, Massachusetts. For these reasons, and as set forth more fully below, Plaintiffs' motion must be denied.

I.  **Mr. Price's Deposition Testimony Became Relevant In Response To Mr. Sparr's Statement In Support Of Plaintiffs' Opposition To Lilly's Motion for Summary Judgment.**

Lilly moved for summary judgment in this case because the pill description offered by Ms. Delaney's mother -- round, white, cross-scored pill dispensed at the Hingham Pharmacy --

---

[2] Lilly is investigating whether it has the exhibits marked at Mr. Price's deposition in 1983 and, if so, will certainly make them available to Plaintiffs. However, the transcript indicates that those exhibits were mostly ledger books pertaining to prescriptions filled at Hingham Center Pharmacy in 1950 and 1951, and therefore appear to have no relevance to Plaintiffs' claims.

was insufficient to identify Lilly when (a) Plaintiff has produced no evidence tending to establish the stocking and dispensing practices of the Hingham Pharmacy, (b) over 60 other companies made DES available for sale in national publications in 1969-70, and (c) it is impossible to show that the above pill description was exclusive to Lilly.

Plaintiffs' opposition failed to identify any Rule 56(e) evidence that Lilly's white, cross-scored DES pill was unique, or that the Hingham Pharmacy actually stocked and dispensed Lilly's DES in 1969-70.  Instead, Plaintiffs relied on the speculation of pharmacist Harold Sparr that "the drugstores in Boston/Hingham stocked Lilly's DES exclusively."  (Docket No. 45, Ex. 7, ¶ 7)  Mr. Sparr's affidavit was not disclosed to Lilly until Plaintiffs filed their opposition to Lilly's motion for summary judgment on October 5, 2006.

Lilly first argued that Mr. Sparr's "expert" testimony should be stricken since he has no personal knowledge of the stocking and dispensing practices of *any* pharmacy in Hingham, much less the relevant dispensing pharmacy.  Moreover, Lilly argued that Mr. Sparr's statement is demonstrably false in light of Mr. Price's deposition testimony that the Hingham Centre Pharmacy carried non-Lilly brands of DES.  Thus, it was only after receiving Plaintiffs' opposition and Mr. Sparr's new affidavit concerning the prevalence of Lilly's DES in the Hingham area that Mr. Price's deposition testimony became relevant.

**II.      Lilly Properly Responded to Plaintiff's Interrogatory.**

The premise of Plaintiffs' motion is that Lilly did not disclose Mr. Price's deposition in its response to Interrogatories No. 1 and 2.  This ignores the facts that (a) Mr. Price's deposition was irrelevant to the stocking and dispensing practices of the relevant dispensing pharmacy (Hingham Pharmacy), and (b) Lilly did not know that Mr. Sparr would claim knowledge of the stocking and dispensing practices of all pharmacies in Hingham until his affidavit was filed with Plaintiffs' opposition to Lilly's motion for summary judgment.

Indeed, Interrogatory No. 1 asked only for the factual basis of Lilly's contention that Ms. Delaney was not exposed to Lilly's brand of DES. *See* Levine Aff. App. 2. Quite simply, Mr. Price's deposition is not responsive because it conveys no information concerning the brand of DES to which Ms. Delaney was actually exposed.

Interrogatory No. 2 similarly sought the identity of individual(s) "who may have information concerning the identity of the brand of DES [that Julie Delaney was exposed to]." *See* Levine Aff. App. 2. The interrogatory does not seek the identity of individuals who may have general information concerning other pharmacies in Hingham, Massachusetts that undisputedly did not supply the DES to which Ms. Delaney was exposed. Again, Mr. Price's deposition is not responsive because it does not offer insight to the identity of the brand of DES to which Ms. Delaney was actually exposed.

Plaintiffs also argue that Lilly was somehow obligated to disclose Mr. Price's deposition during the six month window between receiving Ms. Delaney's initial responses to Lilly's interrogatories, dated June 9, 2004, which stated only that she was exposed in Hingham, Massachusetts, and her mother's deposition on December 1, 2004, identifying Hingham Pharmacy as the alleged dispensing pharmacy. As noted above, however, Mr. Price's deposition was not responsive to Plaintiffs' discovery requests and did not even become relevant until Plaintiffs introduced a new "expert" affidavit from Mr. Sparr. In any event, Plaintiffs' argument suggests that Mr. Price's deposition concerning the Hingham Centre Pharmacy was not material information once Ms. Delaney's mother testified at deposition that she obtained the DES at Hingham Pharmacy and not Hingham Centre Pharmacy.

Plaintiffs' complaint of delay only highlights their own failure to provide full and fair answers to interrogatories, especially concerning critical information as the name of the

dispensing pharmacy. Lilly's Interrogatory No. 7 asked Ms. Delaney to identify "by name and address, each pharmacy or other supplier that dispensed the DES allegedly ingested by your mother while pregnant with you." (Docket No. 58, Ex. 4) Ms. Delaney responded that "Plaintiff's mother's recollection is that she purchased the DES in Hingham, MA." *Id.* If one were to assume that her mother's later testimony that she obtained the DES at the Hingham Pharmacy was credible and resolute, then Ms. Delaney was obligated to disclose the dispensing pharmacy in advance of her mother's deposition.

### III. Plaintiffs Are Not Entitled To Additional Discovery To Meet Their Product Identification Burden And Any Discovery Concerning Mr. Price's Testimony Would Be Futile.

Plaintiffs are not entitled to stay Lilly's motion for summary judgment and conduct further discovery on the issue of product identification. The determinative issue in this case is whether Plaintiffs can meet their burden of proving that Ms. Delaney's alleged injuries were caused by Lilly's brand of DES. Plaintiffs have had ample time to gather this evidence since they filed the complaint against Lilly on January 30, 2004.

Indeed, Plaintiffs did not specify any additional discovery other than possibly seeking records concerning Mr. Price's pharmaceutical practice. Lilly's counsel was informed in a brief telephone call to the Pharmacy Manager at the Hingham Centre Pharmacy that Mr. Price is now deceased, that he sold his interest in the Hingham Centre Pharmacy in October of 1993, and that the pharmacy did not retain any records after 1993.

Most concerning, however, is Plaintiffs' complaint that "there is also not enough time [before hearings on Lilly's motion for summary judgment] for Plaintiffs to conduct a proper inquiry" into the DES brands that existed in Hingham, Massachusetts during the relevant time period. Again, the burden of causation and product identification falls squarely on Plaintiffs. On December 4, 2006, two weeks after receiving Mr. Price's deposition testimony, Plaintiffs

opposed Lilly's motion to strike Mr. Sparr's statement on the basis that he had competently analyzed "the most popular brand of DES sold in the Boston area and its environments (which includes Hingham) in 1970," offered to put Mr. Sparr on the stand to enable the Court "to make an informed assessment of his competence and the grounds of his opinions," and re-asserted that "Lilly's DES was ubiquitous and the most popular DES in the Boston Area."  (Docket No. 54)  Yet the next day, on December 5, 2006, Plaintiffs filed the present motion acknowledging that Mr. Sparr's investigation is "incomplete" in light of Mr. Price's deposition.  (Docket No. 57)  Plaintiffs cannot have it both ways.  Either they stand by Mr. Sparr's original statement, or they must concede that his "expert" analysis lacked the requisite thoroughness and reliability to meet their product identification burden.

## CONCLUSION

For the reasons set forth above, Lilly respectfully requests that the Court deny Plaintiffs' Motion to Strike the Deposition of George W. Price.

Respectfully submitted,

ELI LILLY AND COMPANY
By its attorneys,

/s/ Brian L. Henninger
James J. Dillon (BBO # 124660)
Brian L. Henninger (BBO # 657926)
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02110-2600
(617) 832-1000

Dated: December 19, 2006